# Exhibit 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: § | |
| § | Case No. 25-90304 |
| IRON HORSE CHEMICALS, LLC § | |
| § | |
| Debtor. § | |
| § | Chapter 11 |

**DECLARATION OF CHRISTOPHER L. QUINN IN SUPPORT OF
THE DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER (I)
AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363(c) OF
THE BANKRUPTCY CODE; (II) GRANTING ADEQUATE PROTECTION; (III)
SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001;
AND (IV) GRANTING RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, I, Christopher L. Quinn, hereby submit this declaration (this "Declaration") under penalty of perjury:

1. I am the President and CEO of Quinn & Associates, LLC ("Q&A"). I am the Chief Restructuring Officer ("CRO") of Iron Horse Chemicals, LLC ("IHC" or the "Debtor"), a limited liability company organized under the laws of the State of Wyoming and the above referenced debtor-in-possession. I submit this Declaration (the "Declaration") in support of the Debtor's *Emergency Motion for Entry of an Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (II) Granting Adequate Protection; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001; and (IV) Granting Related Relief* (the "Cash Collateral Motion").

2. Since July 25, 2025, I have served as the CRO to the above-captioned debtor and debtor in possession (the "Debtor"). The Debtor retained me to provide advice in connection with the evaluation and implementation of one or more potential financial restructuring transaction(s).

Through my work with the Debtor and the Debtor's principals, I have become familiar with the Debtor's capital structure, business operations, cash position, and liquidity needs.

3. Unless otherwise indicated, all facts set forth in this Declaration are based upon (a) my personal knowledge, (b) my discussions with the Debtor's senior management, the Debtor's professionals, or other interested parties, (c) my review of relevant documents, or (d) my opinion based upon my experience, knowledge, and information concerning the Debtor's operations and financial affairs. I am not being specifically compensated for this testimony other than through payments that I receive in my capacity as an advisor to the Debtor. I am over the age of 18 years and am authorized to submit this declaration on behalf of the Debtor. If I were called to testify, I would testify competently to the facts set forth below.

## BACKGROUND AND QUALIFICATIONS

4. Q&A was founded in the fall of 2021 to provide a wide range of financial advisory consulting services to small and middle-market businesses, ranging from interim management, negotiating out-of-court workouts, chapter 11 reorganizations, advice on recapitalizations, litigation consultations, and business interruption damages, among others.

5. I am the President and CEO of Q&A, and I am the primary consultant for Q&A serving the Debtor. I am an experienced professional who regularly acts as chief restructuring officer, financial advisor, and/or Subchapter V trustee in bankruptcy proceedings. *See, e.g.*, *In re OTSO Energy Solutions, Inc.*, Case No. 24-32847 (Bankr. S.D. Tex.) (financial advisor); *In re Faxon Enterprises, Inc. d/b/a Henderson Fabrication*, Case No. 24-80075 (Bankr. S.D. Tex.) (financial advisor); *In re K&P Commercial Contractors, LLC*, Case No. 24-34688 (Bankr. S.D. Tex.) (Subchapter V trustee); *In re Bebco Environmental Controls Corp.*, Case No. 24-80258 (Bankr. S.D. Tex.) (Subchapter V trustee); *In re Identity Aesthetics Center, LLC*, Case No. 24-

33688 (Bankr. S.D. Tex.) (Subchapter V trustee); *In re Haddad Design & Construction, Inc.*, Case No. 24-33277 (Bankr. S.D. Tex.) (Subchapter V trustee).

6.  I am certified in business valuation and have over 25 years of experience in bankruptcy and restructuring matters. I am generally recognized for my abilities and competency in bankruptcy engagements, including asset sales.

## THE NEED FOR THE USE OF CASH COLLATERAL

7.  The Debtor's business is cash intensive and requires liquidity to satisfy payroll, pay vendors and suppliers, meet overhead, and make other payments that are essential for the continued management, operation, and preservation of the Debtor's business.

8.  Together with the Debtor's management, I developed the 13-week budget (the "Budget") attached hereto as **Exhibit "A."** The Budget contains line items for each category of cash flows anticipated to be received or disbursed during the time period for which the Budget is prepared. The Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the operation of the Debtor's business for the period in the Budget (e.g., payroll and other operating costs).

9.  The ability to satisfy these expenses when due is essential to the Debtor's continued operation of its business during this case. Unfortunately, due to issues with Bison Payments, LLC ("Bison") and amounts purportedly due under the Quick Pay Agreement, dated June 26, 2023 (the "Quick Pay Agreement"), the Debtor has been left with insufficient liquidity to fund their ongoing operations, their working capital needs, and the project cost of this case without the use of cash collateral. Indeed, the Debtor filed this case with approximately $400,000.00 of cash on hand. This amount is insufficient to fund the Debtor and this case for certain amount of time while the Debtor seeks to either sell or restructure itself.

10. Without use of Cash Collateral, the Debtor will be unable to continue operations and will, instead, be forced to cease operations and liquidate, which would materially diminish the value that might otherwise be available for distribution to the Debtor's stakeholders. Specifically, Bison will likely realize a higher return on its purported outstanding debt if the Debtor is authorized to use Cash Collateral.

11. Failure of the Debtor to use Cash Collateral will engender material delay in this Bankruptcy Case that the Debtor can ill afford, and, among other things, engender even more uncertainty with the Debtor's vendors and other counterparties. Moreover, Bison will likely realize a lower return on its purported outstanding debt if the Debtor is not authorized to use Cash Collateral.

12. While, to date, the Debtor has not secured debtor in possession financing, the Debtor's working capital and net operating cash flow are projected to be sufficient to fund operations and administrative costs for not less than four (4) weeks after the Petition Date.

13. If the Debtor is allowed to use Cash Collateral, the Budget shows that the Debtor will have adequate liquidity to continue to operate and seek a value maximizing sale of the assets or a reorganization. Indeed, I believe that granting the Debtor use of Cash Collateral will not only benefit Bison but all other stakeholders as well.

Signed on this the 12th day of August, 2025.

By: */s/ Christopher Quinn*
Christopher L. Quinn
Chief Restructuring Officer
Iron Horse Chemicals, LLC